Robert L. CORBELL and Katharene
M. Corbell, husband and wife,
Appellees,

v.

The STATE of Oklahoma, ex rel.
DEPARTMENT OF TRANS-
PORTATION, Appellant.

No. 77423.[1]

Court of Appeals of Oklahoma,
Division No. 3.

March 9, 1993.

Rehearing Denied April 27, 1993.

Certiorari Denied June 29, 1993.

1. This action was made a companion case to Appeals 77,232 and 78,755. Appeal 78,755 was consolidated with Appeals 78,756 and 78,757. Each was initiated as a separate landowners' action, but all arise from essentially the same alleged circumstances.

Morris R. Bell, Becky D. McDown, Oklahoma City, for appellant.

Leonard M. Logan, IV, Vinita, for appellees.

## MEMORANDUM OPINION

HANSEN, Chief Judge:

Appellant (Department) seeks review of judgment for Appellees (Landowners) in this action for injury to real property. It further seeks review of the trial court's order assessing attorney fees. We affirm.

Landowners filed their petition on July 1, 1988. They claimed Department, as part of a road improvement project in 1983, replaced a culvert which had been draining their land with another culvert, creating an impediment to the flow of water from their property. Landowners further claim the impeded flow in turn subjected:

> ... [Landowners'] land to almost continual flooding, and which has so substantially interfered with [Landowners'] use and enjoyment of their property as to constitute a taking by [Department] without just compensation and without resort to eminent domain.[2]

The petition states that Landowners were bringing "special proceedings" pursuant to the provisions of 66 O.S.1991 § 53[3], "23 O.S.A. § 12" (sic)[4], and O.S.1981

---

2. While not expressly mentioned in the Petition, the type of action Landowners' allegations describe is most commonly known as an inverse condemnation. The action is sometimes referred to as reverse condemnation or condemnation in reverse.

3. This section was amended effective May 8, 1991, prior to the filing date of Landowners'

petition. Sections 53 et seq. generally provide procedures for condemnation proceedings in the exercise of the right of eminent domain.

4. This is apparently meant to cite 27 O.S.1981 § 12, which authorizes reimbursement of expenses under certain circumstances in inverse condemnation proceedings.

Const. art. 2, § 24.[5] Landowners asked the trial court to appoint commissioners "for the purpose of determining the value of [Landowners'] property taken and/or damaged".

Department filed a special appearance and motion to dismiss. Department argued Landowners' action was really one in tort, there having been no "taking" of Landowners' property, and that the tort action was barred because Landowners had not filed their claim under the Governmental Tort Claims Act[6] within the prescribed one year.

In response, Landowners asserted they were alleging no wrong cognizable under the Tort Claims Act; that their action was one for "just compensation" under the Oklahoma Constitution and that whether there was a taking in the constitutional sense was a matter to be determined by the trier of fact.

The trial court denied Department's motion to dismiss. The court then appointed commissioners to view and assess the injury Landowners "have sustained by the alleged appropriation of their lands by [Department] for purposes of a flowage easement thereon". The commissioners' report assessed damages at $35,000.00.

Notice of the commissioners' report was given to both parties. The notice advised the parties a legal challenge to the report must be made by written exceptions within thirty days of the date of the report, and that a demand for jury trial must be made within sixty days of the report. The record reflects both parties demanded jury trial, but neither filed exceptions to the commissioners' report.

Shortly before the case was set for trial, Department filed a motion for summary judgment. In its motion, Department listed only two material and uncontroverted facts. The first was that the parties stipulated the date of taking, if any, was November 15, 1983, the date construction of the culvert in controversy was completed.

The only other uncontroverted fact was the date Landowners filed their action to recover just compensation.

Department contended Landowners' action was barred by the running of the statutory limitation period. Department argued alternatively that the limitation period was either two years, if the action was actually one in tort[7], or three years, if the action was one for "just compensation" under the authority of O.S.1981 Const. art. 2, § 24.

As to the latter, constitutional action, Department asserted in its brief on the motion that the three year limitation period found at 12 O.S.1981 § 95 Second, was applicable under the Oklahoma Supreme Court's holding in *City of Oklahoma City v. Daly*, 316 P.2d 129 (Okla.1957).

The trial court denied Department's motion for summary judgment and the matter was tried before a jury. The jury returned a verdict in favor of Landowners in the amount of $40,000.00. The trial court entered judgment in that amount, noting the damages were "occasioned through taking on November 15, 1983 of a flowage easement over and across" Landowners' property. The court specifically reserved the issues of fees and costs.

Department filed its petition in error from the trial court's judgment on the jury verdict. Subsequently, after a hearing with submission of supporting documentation, the trial court entered an order assessing fees and costs against Department. The court awarded attorney fees, including an incentive or bonus fee, expert engineering and appraisal fees, court and legal costs, and both prejudgment and postjudgment interest. Department amended its petition in error to challenge the order assessing fees and costs.

We consider together Department's argument on appeal that Landowners' action is actually one in tort, not inverse condemnation, and its contention that the statute

---

**5.** This section provides, *inter alia,* that "private property shall not be taken or damaged for public use without just compensation".

**6.** 51 O.S. Supp.1985 §§ 151 et seq.

**7.** 12 O.S.1981 § 95 Third.

of limitations has run in either case. We find no merit in this argument.

■ Inverse condemnation actions are authorized under Section 24, Article II of the Oklahoma Constitution, which states, in part:

Private property shall not be taken or damaged for public use without just compensation. . . .[8]

Our Supreme Court, in discussing the evolution of just compensation clauses of earlier constitutions, protecting only against *taking* of private property, stated:

. . . we think that the inclusion in our Constitution of the prohibition against the taking *or* damaging of private property for public use was due to the opinion of its makers that the *consequential damage* resulting from public improvements on other land should be compensated. (emphasis added)

*State Highway Commission v. Smith,* 146 Okla. 243, 293 P. 1002 (1930).

In *Smith,* the Highway Commission argued that a landowner could not resort to condemnation proceedings to ascertain damages caused by construction of a highway on the land of another. The Court there held the test of liability in condemnation was whether private property had been damaged for the public use, without regard to the means by which the injury was effected. *Smith,* at 1004.

■ We find *Smith* early on contemplated circumstances as we have before us. More recently, the Supreme Court found that consequential flooding brought about by construction of an adjacent highway, if serious enough to constitute substantial interference with use and enjoyment of the property, may be a taking in the constitutional sense. *State ex rel. Department of Transportation v. Hoebel,* 594 P.2d 1213 (Okla.1979). Whether such a taking is present is a question for the trier of fact. *Hoebel,* at 1215.

■ In its motion for summary judgment, Department lists as an uncontroverted fact that Landowners filed this action to recover "just compensation". In its brief on the motion, Department notes Landowners "have not claimed any negligence in the construction of the new bridge culverts". It appears implicit that Department conceded the nature of the proceedings.

Prior to this appeal, Department's contentions that tort procedures were somehow applicable were little more than mere assertions. We are not inclined to consider those contentions further here, particularly Department's theory that it is legally precluded from taking property unless it finds a necessity for the taking. The question of necessity was never raised below.

Finding the trial court's application of inverse condemnation procedures to be proper, we turn to the question of the statute of limitations. We find no definitive ruling of our Supreme Court as to the applicable limitation period under the facts before us. Upon examination of the analogous authorities, we conclude application of the fifteen year prescriptive period[9] to be most appropriate.

Landowners rely primarily on the Supreme Court's holding in *Oklahoma City v. Wells,* 185 Okla. 369, 91 P.2d 1077 (1939), in which it adopted the view that in an inverse condemnation action a landowner's:

. . . right of recovery is founded upon and grows out of his title to the land, and until such title is lost by adverse possession he should have the right to maintain an action to recover that which represents the property itself.

*Wells* is instructive, but may be distinguished on its facts. There the city had clearly taken and occupied the land as a city park. Title was in issue, but not whether there had been a taking. In the present case, the question of taking is most critical.

8. The right of eminent domain is an attribute of sovereignty, and the constitutional and statutory provisions are merely limitations upon the exercise of that right. *Arthur v. Board of Commis-*

*sioners of Choctaw County,* 43 Okla. 174, 141 P. 1 (1914).

9. 12 O.S.1981 § 93(4).

Department, in turn, relies primarily upon *City of Oklahoma City v. Daly,* 316 P.2d 129 (Okla.1957). In *Daly,* the Supreme Court found the three year limitation period found at 12 O.S.1951 § 95(2) applicable to an action under Section 24, Article II of the Oklahoma Constitution. Again, the facts may be distinguished because the *Daly* court considered only consequential damage to private buildings caused by construction of a city sewer, not a taking as is alleged here.

■ We find if the trier of fact determines there is a taking, even if the taking is the unintended, consequential result of a public improvement, the action is one properly in inverse condemnation and the applicable limitation period is fifteen years. To hold otherwise would be to allow the taking entity to effectively gain title, or at least some property interest, short of the prescriptive period.

■ If the trier of fact determines there has been *no* taking, the limitation period is the three year period found applicable in *City of Oklahoma City v. Daly,* 316 P.2d at 132.

The parties stipulated only to the date of taking, *if any.* Whether there has been a taking is the central point of the controversy between the parties. The trial court may not decide whether this action is barred by the statute of limitation until the issue of taking is resolved by the trier of facts under the prescribed condemnation procedures.

■ The trier of fact in this case did determine there was a taking of an interest in Landowners' property. We will not disturb the findings of the jury if supported by any competent evidence. *City of McAlester v. Delciello,* 412 P.2d 623 (Okla.1966). There being competent evidence of record to support the finding of a taking, the trial court's determination that the fifteen year limitation period was applicable was correct.

■ Department next contends the trial court erred in allowing Landowners to introduce evidence that Department's maintenance crews were dredging the area around the culvert in question. The clean up operations began shortly before trial and continued during the period of the trial. Department attempted to exclude any evidence relating to the clean up through a motion in limine.

The motion in limine was based on 12 O.S.1981 § 2407, which excludes evidence of "subsequent remedial measures" to prove negligence or culpable conduct on the part of the party taking the remedial measures. The trial court overruled the motion "provisionally".

When Landowners attempted to elicit testimony as to the clean up, Department first objected on the grounds the question had been asked and answered, although the previous question had concerned a clean up the year before. The trial court overruled that objection, and when the question was asked again Department objected twice, arguing Landowners' counsel was leading the witness.

The trial court sustained Department's objection to the form of the question. Department's counsel then stated, "We renew our earlier objections on that ground". The court overruled this last objection. However, there is nothing in the record to evidence the trial court's understanding of the basis of the objection.

■ A pretrial ruling on a motion in limine is merely advisory and in order to properly preserve objections to evidence, the objection must be made at the time the evidence is submitted at trial. *Zehner v. Post Oak Oil Co.,* 640 P.2d 991, 995 (Okla.App.1981). Because Department failed to specify the nature of its objection at trial, we would be forced to speculate on the nature of the trial court's ruling, and whether it had finally ruled on Department's 12 O.S.1981 § 2407 objection. We find that objection was not properly preserved for our consideration.

■ Department alleges the trial court erred in excluding evidence relating to a beaver dam which Department contends was holding water on Landowners' land. The dam in question was apparently found

after Department's maintenance crew had begun the clean up, and some of the water on Landowners' property had drained off. A man made breach had been created in the beaver dam, causing more water to drain from Landowners' property and flow into the area between the culvert and the property.

Despite Department's contention, the record reflects testimony concerning the dam and the breach, both on direct examination and cross examination of Department's expert environmental consultant. The trial court did preclude further testimony from Department concerning the breach in the beaver dam.

The court made this ruling after it determined it would be unable to discover who had caused the breach, and that because the breach improperly altered the state of the evidence, to continue would prejudice both parties in the eyes of the jury. Under the circumstances, and because the jury heard Department's evidence that the dam could have caused water to be held on Landowners' property, we find no material prejudice to Department's rights.

■ Department complains that prejudicial and irrelevant evidence of a flood in 1986 was presented to the jury. Department argues 1986 was too remote in time from the date of stipulated taking in 1983, and that the evidence showed the major amount of flooding was caused by opening of flood gates after an extraordinary rainfall. As to the latter question, Department claims error in the trial court's failure to give a requested instruction on Acts of God.

We find evidence of the 1986 flood relevant to the critical issue of continual substantial interference with Landowners' use of their property. Landowners concede that this 1986 flood may not have been caused by Department, but do contend that the depth of upstream water on Landowners' property was increased because the smaller culverts were unable to accommodate the volume of water.

■ Department does not specify how the trial court's failure to give the Act of God instruction prejudiced its material rights. We find the instructions given, when considered as a whole, fairly submit the issues. *McAlester Urban Renewal Authority v. Lorince*, 519 P.2d 1346, 1350 (Okla.1974). The jury was informed, *inter alia*, that Landowners had the burden of proving Department's construction "directly caused and resulted in a substantial interference". It is unlikely the jurors misunderstood their legal charge and responsibilities.

Department further contends the trial court "deviated from its proper role and affected [Department's] substantial rights". In support of this contention, Department sets forth a somewhat lengthy list of alleged improprieties which it argues cumulatively, if not separately, justify reversal. Department argues the trial court interfered with its presentation of its case, and by the court's questioning of only Department's witnesses indicated to the jury the court's view of the case.

Without discussing each of Department's suggestions of improper trial court action, we have reviewed the record and find no material error. A source of much of the purported difficulty emanates from the trial court's understandable consternation with the clean up operation begun by Department just before the trial.

We find no explanation in the record for this ill-timed action, which Department apparently acknowledges altered the state of the evidence while the trial was proceeding. This required the trial court to sometimes make its own determination on how the evidence was to be presented to prevent a mistrial.

As its final allegation of trial court error, Department contends the incentive or bonus fee awarded Landowners' counsel is prohibited by law. More specifically, Department argues such fee is unauthorized by 27 O.S.1981 § 12, which provides that in an inverse condemnation action where the plaintiff prevails, the court will:

... determine an award ... such sum as will, in the opinion of the court, ..., reimburse such plaintiff for his reason-

able costs, ..., including reasonable attorney, appraisal and engineering fees actually incurred because of such proceeding.

In its order awarding costs and fees, the trial court first granted a "compensatory" fee, "based solely on a reasonable number of hours spent times a reasonable rate". Department does not contend this compensatory fee is unreasonable, but argues the trial court was constrained from adding an incentive or bonus fee by the terms of § 12. Department contends this latter fee is not "actually incurred" within the meaning of that section.

We do not share Department's restrictive view of § 12. We view the Legislature's intention as allowing the trial court discretion in determining a reasonable fee, but limiting expenses to those which can be proven to be incurred because of the proceeding.

In the absence of a contract or statute fixing the amount of an attorney fee award, the criteria for determining a reasonable fee are delineated in *State ex rel. Burk v. City of Oklahoma City*, 598 P.2d 659, 661 (Okla.1979). See also, *Oliver's Sport Center v. National Standard Insurance Company*, 615 P.2d 291 (Okla.1980).

In *Burk*, the Supreme Court held the proper procedure the trial court must follow in establishing a *reasonable* fee is to determine the hourly compensation on an hourly rate basis, and then to add an additional amount based on eleven criteria it set forth.

Therefore, a reasonable fee is composed of an hourly, or compensatory, fee and, if the trial court in its discretion determines it to be justified, an additional or incentive fee. If no abuse of the trial court's discretion is found, this reasonable fee is that which is actually incurred within the meaning of 27 O.S.1981 § 12.

Department here argues only that the trial court was precluded, as a matter of law, from awarding the incentive or bonus fee. It does not argue that the trial court abused its discretion in determining the amount of that component of the total fee. The trial court's award was accompanied by appropriate findings consistent with the Supreme Court's mandate in *Burk*.

Finding the attorney fee award authorized by statute, and no abuse of the trial court's discretion, its order granting fees and costs is affirmed.

The judgment of the trial court and its order granting fees and costs are AFFIRMED.

Landowners' request for appeal-related attorney fees is granted. *McAlester Urban Renewal Authority v. Lorince*, 519 P.2d at 1352. This matter is remanded to the trial court for the sole purpose of holding an evidentiary hearing to determine a reasonable fee for appeal-related attorney services.

BAILEY, P.J., and HUNTER, J., concur.